**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 5, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2025AP1039**

**STATE OF WISCONSIN**

Cir. Ct. No. 2025CV106

**IN COURT OF APPEALS
DISTRICT II**

TOWN OF GENEVA,

    PLAINTIFF-RESPONDENT,

V.

TERRY DOUGLAS LITTS, II,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Walworth County: DANIEL S. JOHNSON, Judge. *Affirmed*.

¶1 LAZAR, J.[1] Terry Douglas Litts, II, appeals the circuit court's order, which affirmed a Town of Geneva municipal court's guilty verdicts for Operating with a Prohibited Alcohol Concentration and Operating a Motor

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

Vehicle while Under the Influence. He asserts that the chain of custody of his drawn blood was not appropriately established, that no one testified that the draw was performed by a qualified individual, that his confrontation of witnesses right was violated, and that telephone testimony was improperly allowed. This court disagrees.

## BACKGROUND

¶2      The following facts are derived from the transcript of the municipal court trial. On June 18, 2023, an officer, responding to a motorcycle accident, found Litts standing near a motorcycle that was lying in a ditch by a traffic sign that was down and broken in half. Litts had a bloody face and "muddy or muddy dirty clothes." When the officer questioned him about "where he was coming from and basic information[,]" Litts responded that he had stopped at two bars that day and had consumed "approximately three White Claws[.]" The officer "could smell the odor of intoxicants from [Litts's] breath."

¶3      The officer arrested Litts for operating while intoxicated. Litts consented to a blood draw, which took place in the presence of that officer at a nearby hospital. The officer did not remember who drew the blood, but indicated it was either a phlebotomist or medical technician. Two vials of Litts's blood were drawn and placed in a labeled and sealed Styrofoam blood kit, which the officer took with him to the police station. At the police station, the blood samples were secured into an evidence locker, where they remained until either the chief of police or administrative assistant mailed them to the state hygiene lab.

¶4      The officer received the Wisconsin State Laboratory of Hygiene Laboratory Report (the "Lab Report") that reflected the results of the test measuring Litts's blood ethanol levels at 0.224 grams per 100 milliliters. The

officer mailed Litts a copy of the test and a citation for operating with a prohibited alcohol concentration, first offense.

¶5 At trial, the Town called a forensic scientist from the Wisconsin State Laboratory of Hygiene, who appeared via telephone over Litts's objection to the telephonic appearance. She testified that the lab received the container of Litts's blood samples in a sealed and labeled condition. She also testified that she was one who opened the sealed container and confirmed that it included two vials, as was standard practice. The scientist testified that although the seals were over the labels, which was "out of the norm[,]" the seal did not appear to have been pulled up or tampered with in any way, and so she concluded the blood sample had not been tampered with after the blood was drawn.

¶6 Litts's counsel asked the forensic scientist, on cross-examination, "[W]hat training do you have on determining whether or not seals had been tampered with?" She responded, "I have direct training from working with the samples. The seals that we use are extremely sticky so if they are removed it is pretty obvious[.]" Later, Litts's counsel asked her, "[H]ave you ever tried to open any envelopes with a hair dryer or anything like that?" She replied that she had not.

¶7 At closing, Litts's counsel argued that there was "no testimony regarding a chain of custody of what happened after the vials returned to the police department" and contended that the officer's testimony was "somewhat incredible that he was able to remember seeing all these things but can't remember the phlebotomist's hair color." Additionally, he argued that "Litts has a constitutional right to confront the witnesses who are accusing him and test the evidence against him. … [H]e hasn't been able to do that[.]" The municipal court disagreed,

concluding that it "didn't find anything in that chain of custody that was fatal to the belief that in fact the blood that was taken from [Litts's] arm was the blood that was tested at the state lab." The court found Litts guilty of both citations, and imposed forfeiture for Operating with a Prohibited Alcohol Concentration in the amount of $861, with an additional $25 fee for the blood draw, and a $50 surcharge.

¶8      Litts appealed the verdict to the circuit court, requesting a transcript review and arguing that the officer who arrested him did not have probable cause to do so; that the Town did not establish the requisite chain of custody for his blood sample; that there was no testimony that a qualified professional drew his blood for the purposes of WIS. STAT. § 343.305(5)(b); that the municipal court improperly permitted the forensic scientist to testify via telephone; and that he was deprived of a common law right to confront the witnesses against him. The circuit court, after conducting its transcript review, affirmed, finding the officer had probable cause, and that the officer's testimony about observing the blood draw was credible, elaborating "[i]t is not reasonable to expect [the officer] to remember the color of the phlebotomist's hair when that detail had nothing whatsoever to do with the investigation[.]" The court disagreed with Litts on the chain of custody issue, noting "this issue goes to the weight of the evidence and not its admissibility[,]" and found the blood sample evidence was "credible regardless of any chain of custody issue[.]" Litts appeals.

## STANDARD OF REVIEW

¶9      For a circuit court reviewing an appeal from a municipal court decision, "the proper standard of review is similar to that which applies to appellate review of a trial to the court[.]" *Village of Williams Bay v. Metzl*, 124

Wis. 2d 356, 357, 369 N.W.2d 186 (Ct. App. 1985). Because Litts chose a transcript review as his method of appeal rather than a new trial in circuit court, the circuit court was limited "to an examination of the transcript to determine whether the evidence supports the municipal court decision." *Id.* at 361. "[F]indings of fact of the municipal court should not be set aside by the circuit court unless clearly erroneous and due regard should be given to the opportunity of the municipal court to judge the credibility of the witnesses." *Id.* This court "applies the same standard of review as the circuit court. We search the record for facts to support the municipal court's findings of fact." *Id.* at 362 (footnote and internal citation omitted).

## DISCUSSION

¶10 Litts presents the following arguments on appeal: (1) that the chain of custody was not established, (2) that there was no testimony the blood draw was performed by a qualified person, (3) that Litts was deprived of his right to confront witnesses, and (4) that telephonic testimony was improperly permitted. This court addresses each below.

### I. Litts's blood was not drawn in violation of WIS. STAT. § 343.305(5)(b).

¶11 Wisconsin statutes determine who is authorized to draw blood for the purpose of blood alcohol tests:

> [b]lood may be withdrawn from the person … to determine the presence or quantity of alcohol … only by a physician, registered nurse, medical technologist, physician assistant, phlebotomist, or other medical professional who is authorized to draw blood, or person acting under the direction of a physician.

WIS. STAT. § 343.305(5)(b).

¶12    Litts argues, "[n]obody ever appeared to testify that they drew blood at all, much less were qualified to do so."  He argues that the officer's testimony was inadmissible hearsay.  Moreover, he disputes the credibility of the officer, arguing that he "could still not recall a simple detail, the color of the [person who withdrew the blood]'s hair."

¶13    This court concludes the municipal court did not clearly err by finding the officer's testimony credible.  While the person who drew Litts's blood did not testify, the officer's testimony that the blood draw took place at a hospital and that he witnessed the blood draw himself, was sufficient to establish that the blood draw was performed by a qualified person.  That the officer could not remember the exact person who performed the draw, particularly their hair color, does not clearly undermine the officer's credibility.  It is unreasonable to expect the officer to perfectly recall details, that were not relevant to the investigation the officer was conducting, a great deal of time after the fact.  Litts's contention that the officer's testimony was hearsay fails because the officer was speaking based on what he directly saw, not to any out-of-court statements made by the person who drew Litts's blood.

**II.  The chain of custody was sufficiently established.**

¶14    "The degree of proof necessary to establish a chain of custody is a matter within the trial court's discretion.  The testimony must be sufficiently complete so as to render it improbable that the original item has been exchanged, contaminated or tampered with."  *B.A.C. v. T.L.G.*, 135 Wis. 2d 280, 290, 400 N.W.2d 48 (Ct. App. 1986) (internal citation omitted).

¶15    The supreme court in *State v. Disch*, 119 Wis. 2d 461, 351 N.W.2d 492 (1984), describes blood test evidence due process concerns:

> [t]he results of a blood test mandated by statute are prima facie correct, and the results are statutorily admissible. Impeaching factors which may result from cross-examination of those who have performed the tests go to the weight of the evidence or the credence to be given to the witnesses by the factfinder.

*Id.* at 494.

¶16     Litts argues that the chain of custody was not established because the person who drew the blood sample did not testify, nor did the person who sent the specimens from the police station evidence locker to the lab. We disagree. The officer testified that the person who drew the blood was a medical technician or phlebotomist, both of which are authorized by statute to draw blood samples for blood alcohol tests. In addition, there can be no serious dispute that the sample was sent from the police station to the laboratory, because the forensic scientist testified she received the two blood vials, and confirmed that both contained Litts's blood after examining the labels. The possibility of tampering with the sample is minimal here, given that the officer testified that it was standard protocol for samples to remain secured in an evidence locker until either the chief of police or administrative assistant mailed them directly to the state hygiene lab. Litts contends that this part of the officer's testimony was also hearsay because the person who drew the blood and the person who mailed the samples did not testify, but once again, the officer testified to his own knowledge of station protocol, not to actions he did not witness.

¶17     Litts also contends that the placement of the seal over the label was never explained. While the forensic scientist did confirm this was against protocol, she testified that she was trained to examine the seals for any sign that boxes containing samples had been prematurely opened, and she did not observe any evidence they had been. While Litts did challenge her on this point via

cross-examination by asking if she "ever tried to open any envelopes with a hair dryer or anything like that[,]" Litts did not explain how the box could have been opened under seal this way, or present any other evidence the sample had been tampered with. We conclude the municipal court did not clearly err by finding the forensic scientist's testimony credible based on the information it heard.

## III. Telephonic testimony was not improperly permitted nor was Litts's right to confront witnesses violated.

¶18 If the parties do not stipulate that a witness may appear via telephone, a trial court may still find good cause to allow it. *See* WIS. STAT. § 800.085. The statutory factors a court must consider are:

> (a) Whether any undue surprise or prejudice would result.

> (b) Whether the proponent has been unable, after due diligence, to procure the physical presence of the witness.

> (c) The convenience of the parties and the proposed witness and the cost of producing the witness in relation to the importance of the offered testimony.

> (d) Whether the procedure would allow full effective cross-examination, especially where availability to counsel of documents and exhibits available to the witness would affect such cross-examination.

> (e) The importance of presenting the testimony of witnesses in open court, where the finder of fact may observe the demeanor of the witness, and where the solemnity of the surroundings will impress upon the witness the duty to testify truthfully.

> (f) Whether the quality of the communication is sufficient to understand the offered testimony.

> (g) Whether a physical liberty interest is at stake in the proceeding.

> (h) Financial or physical limitations on the ability of the defendant or counsel for the defendant to be physically present.

> (i) Any other factors as the court may, in each individual case, determine to be relevant.

Sec. § 800.085(2)(a)-(i). "To allow [telephonic] testimony is a matter that lies within the exercise of judicial discretion that makes sure that fair play is accorded the trial participants." *Town of Geneva v. Tills*, 129 Wis. 2d 167, 186, 384 N.W.2d 701 (1986). "A [trial] court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon facts in the record." *King v. King*, 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999).

¶19 Litts cites *Tills* in support of his contention that the municipal court erroneously exercised its discretion by allowing the forensic scientist to testify via telephone. In *Tills*, the defendant was cited for violating a municipal traffic ordinance which conformed to the statutory offenses of operating a motor vehicle while under the influence of an intoxicant and illegal blood alcohol concentration. 129 Wis. 2d at 168. The *Tills* court, acting sua sponte during a noon break while the trial was ongoing, decided that it would telephone a State Laboratory of Hygiene chemist to testify via telephone against the defendant. *Id.* at 170. The defense objected that he would be unable to effectively cross-examine the witness due to not being able to see her facial expressions, and that "he had intended to cross-examine [the witness] by use of a chalk board to explain the blood alcohol test techniques to the jury." *Id.* "The trial judge disposed of the objections by stating: 'I'm not going to waste anymore time on this. As far as I'm concerned, I have looked it up, and that is the law, so I'm going to allow his testimony by telephone and we'll bring the jury in.'" *Id.* at 171. As defense counsel tried to cross-examine the witness, he did not have access to a blood test document that the witness did have access to and was relying upon. *Id.* at 174. The jury returned

a guilty verdict, but our supreme court reversed because the *Tills* court erroneously exercised its discretion in those circumstances. *Id.* at 176, 178-79.

> ¶20 However, *Tills* clarified,
>
> > the infirmity of this proceeding lies not in anything intrinsically wrong in respect to the use of telephonic testimony in a civil case, but rather in that the judge exercised his discretion in such a manner as to surprise defense counsel with a witness who could not be properly cross-examined because he testified from documents which were not produced in court, and from documents that defense counsel did not know he would need to cope with [the witness's] testimony until just minutes before the telephonic testimony was heard by the jury.

*Id.* at 182.

¶21 Here, Litts cites no documents which the forensic scientist relied upon as part of her testimony which he could not see for cross-examination. To the contrary, the Lab Report was admitted into evidence. Litts was able to cross-examine the forensic scientist about the seal protocol and her qualifications for determining whether the samples had been tampered with unimpeded by the kinds of issues presented in *Tills*. Therefore, this court concludes the municipal court did not erroneously exercise its discretion in a way that impeded cross-examination or violated Litts's rights to confront witnesses, particularly at the court trial.

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.